UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PA REALTY GROUP, LLC, in capacity as Successor Agent under those certain 12% Series A Senior Secured Convertible Promissory Notes, | : : : : : : | Docket No. 3:16-cv-630 (VLM) CM/ECF |
| Plaintiff, | : : | |
| v. | : : | |
| H. LEE HORNBECK, in capacity as Agent, | : : : | |
| Defendant. | : | May 16, 2016 |

**FIRST AMENDED COMPLAINT AS OF RIGHT**

Plaintiff, PA Realty Group, LLC, Successor Agent under those certain 12% Series A Senior Secured Convertible Promissory Notes ("Plaintiff"), by and through its attorneys, Gora LLC, as and for its First Amended Complaint as of Right, against H. Lee Hornbeck, Agent ("Defendant"), alleges as follows:

NATURE OF THE ACTION

1. This action seeks a declaration that Plaintiff is the duly appointed Successor Agent under those certain 12% Series A Senior Secured Convertible Promissory Notes of Stratex Oil and Gas Holdings, Inc. ("Stratex"), and that the Defendant was properly removed as Agent under those certain 12% Series A Senior Secured Convertible Promissory Notes.

JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties

and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## VENUE

3.   The venue of this matter is appropriate in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the underlying agreements provide for venue in this district.

## PARTIES

4.   Plaintiff is a limited liability company organized and existing under the laws of Connecticut. The member of the plaintiff is a citizen of the state of New York.

5.   Defendant is an individual and a citizen of the state of North Carolina.

## FACTS

6.   Stratex (STTX:OTC US) is a publicly traded energy company focused on the acquisition and subsequent organic exploitation and development of primarily operated crude oil properties.

7.   In January 2014, Stratex engaged in a private placement of up to a maximum of $10,000,000 (the "Offering") of 12% Series A Senior Secured Convertible Promissory Notes in the principal amount of $50,000.00 convertible into shares of Stratex common stock, par value $0.01, at a conversion price of $0.30 per share.

8.   In the Offering, Stratex raised $9,987,650.

9. In the Offering, Stratex forwarded a private placement memorandum (the "PPM") to potential investors, and received from each of the Note Holders a signed subscription agreement and a signed security agreement.

10. In exchange for the Note Holders' signing the subscription agreement and the security agreement, and providing capital to Stratex, Stratex issued a Note and a Warrant to each of the Note Holders.

11. On February 11, 2014, the Security Agreement, dated February 11, 2014 (the "Security Agreement"), appointed defendant "to act as [the Note Holders'] agent for purposes of exercising any and all rights and remedies of the [Note Holders] hereunder."

12. The Security Agreement provides further that defendant's appointment as agent "shall continue until revoked in writing by a Majority in Interest, at which time a Majority in Interest shall appoint a new Agent."

13. A "Majority in Interest" is defined in the Security Agreement as "the majority in interest (based on then-outstanding principal amounts of Notes at the time of such determination) of the [Note Holders]."

14. The defendant accepted the appointment as agent of the Note Holders under the Security Agreement.

15. The Note provides, "Each Series Holder agrees that it will not have any right individually to enforce or seek to enforce the Series Notes or Security Agreement or to realize upon any collateral security for the Series Notes, it being understood and agreed that such rights and remedies may be exercised only by the Agent on behalf of all Series Holders pro rata."

16.     On or about February 20, 2014, defendant perfected his security interest under his security agreement with Stratex over "All assets of [Stratex] now owned or hereafter acquired" through the filing of a UCC Financing Statement dated February 20, 2014 (the "<u>Defendant's UCC</u>").

17.     Despite his appointment as agent of the Note Holders in February 2014, defendant has not perfected any security interest of the Note Holders under the Security Agreement.

18.     Defendant continues to hold the Defendant's UCC.

19.     Despite purchasing "secured" notes in the offering, the Note Holders never had a perfected security interest in any Stratex assets.

20.     The Note Holders were to receive secured promissory notes in the Offering.

21.     The Note Holders do not have a perfected security interest in any Stratex asset.

22.     Neither the defendant nor any other individual filed any UCC Financing Statement for the Note Holders.

23.     Nor did the defendant or any other individual record any mortgage or lien for the Note Holders on any Stratex assets.

24.     Radnor Research & Trading Company LLC, now known as Global Emerging Capital Group, LLC ("<u>Radnor</u>"), was the exclusive placement agent for the Offering, and could have caused the filing and perfection of the security interest of the Note Holders. But Radnor, who marketed the Notes as secured

notes to Note Holders, did nothing to perfect any security interest for the Note Holders.

25. After closing the Offering, Radnor completed a subsequent private placement offering for Stratex: 12% Series B Senior Secured Convertible Promissory Notes (the "Series B Notes"). The security interest for the Series B Notes is not perfected, either.

26. Defendant essentially did nothing as agent of the Note Holders.

27. Defendant could not have cared less as agent of the Note Holders.

28. He did not perfect any security interest of the Note Holders, all the while surreptitiously holding onto the Defendant's UCC.

29. Defendant did not tell Stratex about the Defendant's UCC.

30. Defendant did not tell any of the Note Holders about the Defendant's UCC.

31. Defendant's UCC was a massive secret unexposed until April 2016.

32. On October 26, 2015, defendant forwarded to Stratex a Notice of Event of Default, Notice of Acceleration of Obligations and Notice of Demands (the "Notice of Default") as a result of Stratex's failure to pay installments of interest on the Notes.

33. Three weeks later, defendant forwarded a letter, dated November 16, 2015 (the "November Letter"), to the Note Holders.

34. The November Letter states in pertinent part:

> [Stratex] has defaulted on the payment of the interest
> and is in fault to the Series A & B Noteholders, hereafter
> referred to as "Noteholders". The agents, Ernie Orlando
> and I have begun the process of determining what the

5

**current financial position of Stratex is and what can be done to secure or position as secured Noteholders. Our preliminary information indicates that Stratex is in extremely poor financial position and there is no cash and very few assets of value to repay this note.**

* * *

**The company has an alleged $28 million dollar tax loss carryforward that could be of some value and the current producing wells might be a source of funds but not unless we step in and protect these assets. Currently with payable at what has been told to me by Stratex of $2 million and other required costs and expenses it would take $2 to $4 million cash to clean up Stratex and market the tax loss carryforward which could be worth $6 to $7 million dollars. Stratex has told me that the current well assets are of little value and would be difficult to get a fair price in the current distressed market however they are worth saving and getting what we can.**

**We have sent notice of default and demand for payment as required by the note to Stratex along with a notice of the sale of assets if we the agents decide this is the best approach to get payments to the Noteholders.**

**In order to save these assets, pay existing expenses, legal and accounting fees and determine if it is feasible to try and recover a net $4 to $5 million in the tax loss carryforward and whatever we can from the producing wells the agents are levering a $500 per $100,000 call on all Noteholders. These funds should immediately be sent by wire transfer to the Washburn Law Firm attorney's trust account at the Banking information or a check sent to the address provided.**

**We are continuing to determine what needs to be done to best protect the assets and recover as much of the Noteholders funds as possible. Stratex and the agents are pursuing other avenues to determine if additional possibilities exist to pay back the Noteholders.**

**Please forward your payment to the below Attorney's Trust Account.**

35. Defendant collected approximately fifty thousand dollars from the Note Holders under the capital call (the "Capital Call") in the November Letter. The Note Holders never received an accounting of any funds raised under the November Letter.

36. Under the guise of determining "what needs to be done to best protect the assets and recover as much of the Noteholder funds as possible," the defendant authorized his best friend of many years – Jack Munsey, the Chief Executive Officer of Washburn Law PLLC ("Washburn Firm") – to obtain a certain Chevrolet Tahoe from Stratex.

37. While Stratex and Washburn Firm entered into a Bill of Sale and Assignment and Assumption Agreement for the purchase of the Chevrolet Tahoe, Stephen P. Funk, the Chief Executive Officer of Stratex, believed that Washburn Firm, which is counsel for the defendant, was securing the Chevrolet Tahoe on behalf of the Note Holders – not for Mr. Munsey's personal use.

38. The defendant later confessed that "Jack Munsey made a private arrangement with Steve Fund and with regard to a car owned by Stratex. This deal was negotiated by Steve Funk, with Jeff Robinson of Startex [sic] . . . I did absolutely nothing contrary to your interests at any time."

39. In that regard, counsel from the Washburn Firm stated further on that issue, "As far as the Tahoe is concerned, that was a deal done outside of the scope of our representation. The Tahoe was transferred to Jack Munsey as an individual by Steve Funk in exchange for assuming the debt on the vehicle which

7

was no longer needed as a company vehicle and had been for sale for quite a while."

40. In short, defendant authorized his long time friend to acquire the motor vehicle in blatant disregard of any security interest – perfected or not – held by Note Holders.

41. By April 17, 2016, a Majority in Interest of the Note Holders removed the defendant, and appointed the plaintiff as agent of the Note Holders.

42. The Note Holders affirmatively removing the defendant as agent, and appointing the plaintiff as agent, hold $5,255,000 (52.6%) of the $9,987,650 outstanding principal balance of the Notes.

43. By letter dated April 17, 2016, and after gaining a Majority in Interest of the Note Holders to remove the defendants, plaintiff provided defendant with notice of removal and a demand for accounting of the Capital Call (the "**Notice of Removal**").

44. The next day, in response to the Notice of Removal, defendant's counsel wrote "If the Series A Note Holders wish to appoint a new Agent and remove us as counsel, we will certainly consent" and requested a copy of the Removal Votes.

45. Plaintiff responded to defendant's counsel with a draft Non-Disclosure Agreement (the "**NDA**").

46. On or about April 20, 2016, Mr. Munsey communicated to Mr. Funk that defendant intended to file an involuntary bankruptcy petition against Stratex.

8

47. On April 21, 2016, plaintiff demanded defendant cease and desist "from purporting to act as agent of the Notes due to his removal by a majority in interest of the holders of the note" and commenced this action.

48. After receiving the cease and desist demand and notice of this action, defendant wrote, "As my attorney stated if the noteholders wish to appoint a new agent I will be willing to step down."

49. Less than one day later, on April 22, 2016, the defendant resigned as agent of the Note Holders.

50. Despite being removed by the Note Holders and resigning as agent, defendant intends to file an involuntary bankruptcy petition against Stratex on behalf of Note Holders.

51. On or about May 10, 2016, Mr. Munsey informed Mr. Funk that defendant and the agent for the Series B Note (who also is represented by Washburn Firm) intend to file imminently an involuntary bankruptcy petition against Stratex.

52. Filing an involuntary bankruptcy petition would eviscerate the Notes.

53. Because the Notes are not perfected, the Note Holders (unlike the defendant) would be unsecured creditors in any bankruptcy proceeding.

54. In addition, Stratex's primary asset is an approximate $39,000,000 Net Operating Loss ("NOL"), and an involuntary bankruptcy petition would put at risk the NOL.

55. The plaintiff, the Note Holders and Stratex object to the filing of any involuntary bankruptcy petition against Stratex.

## COUNT ONE
### (Declaratory Judgment)

56.    All prior allegations are incorporated fully herein.

57.    An actual case and controversy of a justiciable nature exists between Plaintiff and Defendant involving their rights and obligations of those parties under documents for the Offering, and the controversy may be determined in this action.

58.    All other identifiable persons or entities who have or claim any interest in the matters in controversy or who would be affected by the declarations made by this Court have been made a party to this action.

59.    By affirmative vote of the Majority in Interest of the Holders of the Notes, the appointment of the Defendant as Agent of the Notes was properly revoked and the Plaintiff was appointed as Successor Agent.

60.    Defendant has disputed the affirmative vote of the Majority in Interest of the Holders of the Notes and the appointment of the Plaintiff as Successor Agent.

61.    Thus, an actual dispute and controversy exists with respect to the appointment of Plaintiff as Successor Agent by virtue of Defendant's disputing the affirmative vote of the Majority in Interest of the Holders of the Notes.

62.    Accordingly, a judicial declaration pursuant to 28 U.S.C. § 2201 et seq. is necessary to determine the rights and obligations of the Plaintiff and the Defendant.

## COUNT TWO
### (Unjust Enrichment)

63.   All prior allegations are incorporated fully herein.

64.   The defendant benefited from the receipt of money from the Note Holders and for which the defendant did not provide value.

65.   Defendant unjustly failed to repay the Note Holders for the benefit he received from the Note Holders.

66.   The enrichment was at the expense of the Note Holders.

67.   Equity and good conscience require full restitution of the monies received from the Note Holders.

68.   Defendant's conscious, intentional, and willful tortious conduct also entitles plaintiff to recapture profits derived by the defendant utilizing monies he received from the Note Holders.

69.   By reason of the above, the Plaintiff, on behalf of the Note Holders, is entitled to an award in an amount to be determined at trial.

## COUNT THREE
### (Accounting)

70.   All prior allegations are incorporated fully herein.

71.   The assets of the Note Holders are in the possession or under the control of the defendant and have been wrongfully diverted for purposes other than for the benefit of the Note Holders.

72.   Plaintiff has no adequate remedy at law.

73.   To compensate the Note Holders for the amount of monies the defendant diverted from them, it is necessary for the defendant to provide an

accounting of any transfer of funds, assets, or property received on their behalf, as well as to any profits in the past and on a going forward basis in connection with Note Holders. All relevant information thereto is within defendant's possession, custody, and control.

## COUNT FOUR
## (Constructive Trust)

74. All prior allegations are incorporated fully herein.

75. The plaintiff is entitled to the imposition of a constructive trust.

WHEREFORE, Plaintiff PA Realty Group, LLC, as Successor Agent under those certain 12% Series A Senior Secured Convertible Promissory Notes hereby demands judgment enter in its favor and against Defendant H. Lee Hornbeck, as Agent as follows:

1. A declaration that H. Lee Hornbeck, as Agent, was properly removed under those certain 12% Series A Senior Secured Convertible Promissory Notes;

2. A declaration that PA Realty Group, LLC, as Successor Agent, was properly appointed under those certain 12% Series A Senior Secured Convertible Promissory Notes;

3. For unjust enrichment, in an amount to be determined at trial;

4. A constructive trust;

5. An accounting;

6. Interest, costs and disbursement of this action;

7. Attorneys' fees; and

8. Such other and further relief as the Court deems just and proper.

| | |
|---|---|
| **Dated: May 16, 2016**<br>**Monroe, Connecticut** | **Respectfully submitted,**<br><br>**GORA LLC**<br><br>**By: /s/ Richard S. Gora**<br>**Richard S. Gora (ct27479)**<br>**Gora LLC**<br>**30 Quarter Horse Drive**<br>**Monroe, CT 06468**<br>**Tel.: 203-424-8021**<br>**Fax: 203-549-0410**<br>**Email: Rich@goralaw.com**<br><br>***Attorneys for Plaintiff*** |